Karol Kay PACKARD, as Administratrix and Personal Representative of the Estate of Larry Bartlett, Deceased, et al., Plaintiffs,

v.

CESSNA AIRCRAFT COMPANY et al., Defendants.

Civ. No. A–134–73.

United States District Court, D. Alaska.

Nov. 30, 1973.

Bernard P. Kelly, Kay, Miller, Libbey, Kelly, Christie & Fuld, Anchorage, Alaska, for plaintiffs.

Irving S. Bertram, Hughes, Thorsness, Lowe, Gantz & Clark, and James J. Delaney, Delaney, Wiles, Moore, Hayes & Reitman, Anchorage, Alaska, for defendants.

## MEMORANDUM AND ORDERS

von der HEYDT, Chief Judge.

This matter comes before the Court upon two motions filed by defendants Richard White and Lake Aero Service Company. The first is to quash service of summons and complaint and to dismiss, and the second is to quash the supplemental memorandum in opposition to the first motion.

John R. Gildersleeve is a resident of Alaska. Lake Aero Service was a Washington corporation engaged in the business of selling and repairing aircraft. Until its final dissolution on December 31, 1970, the principal shareholder of Lake Aero Service was Richard White. Neither of defendants has ever transacted any business or advertised within the State of Alaska. In July of 1970, in the State of Washington, Mr. Gildersleeve purchased an aircraft from Lake Aero Service through Mr. White. The transaction was negotiated during the winding up and dissolution of Lake Aero Service. A condition to the sale of the aircraft was the installation of floats by the seller. Mr. Gildersleeve took possession of the aircraft in the State of Washington after the floats were installed, and flew the aircraft to Ketchikan, Alaska. On July 25, 1971, plaintiffs' decedents were killed at Salmon Bay Lake, Alaska, while operating the same aircraft. Plaintiffs alleged generally that the installed floats rendered the aircraft unsafe and caused the accident.

Plaintiffs commenced this action on July 24, 1971, in the Superior Court for the State of Alaska. The case was removed to this court in conformity with 28 U.S.C. § 1441. This court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The service of summons and complaint on these defendants was made pursuant to the provisions set forth in the Alaska long arm statute, A.S. 09.05.015(a)(4), which provides in pertinent part:

(a) A court of this state having jurisdiction over the subject matter has

jurisdiction over a person served in an action according to the rules of civil procedure.

.　.　.　.　.　.

(4) in an action claiming injury to person or property in this state arising out of an act or omission out of this state by the defendant provided, in addition, that at the time of the injury . . .

(B) products, materials or things processed, serviced or manufactured by defendant were used or consumed in this state *in the ordinary course of trade* (emphasis added).

Subsequently, defendants filed the motion to quash service of summons and complaint and to dismiss. Defendants object to the assertion of personal jurisdiction over them on alternative theories. First, defendants contend the Alaska long arm statute does not encompass the acts alleged in the complaint, since the sale was a single isolated transaction which occurred during the winding up and dissolution of Lake Aero Service, and therefore could not have been consummated "in the ordinary course of trade." Secondly, defendants contend, even if the Alaska long arm statute were applicable to the operative facts of this matter, the assertion of personal jurisdiction would violate due process under the test set forth in Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

As to the first theory, the court notes it is immaterial that the sale of the aircraft occurred during the winding up and dissolution of Lake Aero Service. The appropriate Washington statute provides generally that the dissolution of a corporation shall not impair any remedy available against such corporation, its officers, or its shareholders, for any claim existing prior to such dissolution if the action on the claim is commenced within two years of the date of the final dissolution. R.C.W. 23A.28.-250.

■ As to the remaining objection which underlies the first theory, the court notes that the Alaska Supreme Court has not to date interpreted the meaning of the phrase "in the ordinary course of trade" as that term is used in the Alaska long arm statute. Accordingly, this court is required to use its best judgment in predicting how the highest court in the State of Alaska would construe that particular segment of the statute. Alaska Airlines, Inc. v. Northwest Airlines, Inc., 228 F.Supp. 322 (D.C.Ak.1964). Bearing in mind that Alaska's long arm statute is a broad one regarded by the Alaska Supreme Court as an attempt by the legislature to establish jurisdiction to the maximum extent permitted by due process, Jonz v. Garrett/Airesearch Corp., 490 P.2d 1197 (Alaska 1971). The operative facts of this case indicate that the aircraft in question was used or consumed in Alaska "in the ordinary course of trade." The authority relied upon by defendants, McPhee v. Simonds Saw and Mill Co., 294 F.Supp. 779 (Wis.D.C. 1969), is inapposite on its facts, since *McPhee* concerned a single isolated transaction. The deposition of Mr. White in this cause clearly shows that Lake Aero Service had conducted business with numerous Alaskan "drop-in" customers, including Mr. Gildersleeve, for as many as ten years before the date of the transaction here in issue.

■ Defendants' second theory, that application of the long arm statute would result in a deprivation of due process, presents a complex question.

At one time in American legal history, an attempt to obtain an *in personam* judgment over a defendant who was not physically present in the forum state at the time of service of process amounted to a deprivation of due process. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565 (1877). With improved communications and increased interstate commerce came changes in the principles of due process which facilitated the expansion of personal jurisdiction over nonresident defendants:

. . . But now that the *capias ad respondendum* has given way to per-

sonal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, *supra*, 326 U.S. 316, 66 S.Ct. 158 (citations omitted).

No precision instrument has been devised to determine when sufficient "minimum contacts" exist, but it is clear that the emphasis has shifted from a requirement that the defendant be physically present within the forum state to that which emphasizes the nature and quality of a nonresident defendant's activity:

. . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Int'l Shoe Co. v. Washington, *supra*, 319, 66 S.Ct. 160 (citations omitted).

The problem of defining "minimum contacts", as that term is used in the test of *International Shoe* has been complicated by language adopted in a subsequent United States Supreme Court decision:

. . . The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

At least one court has rejected the language of *Hanson* as creating a prerequisite of purposeful activity by the nonresident defendant within the forum state. Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732, 737 (1966). However, most courts appear to have interpreted *Hanson* as requiring purposeful activity on the part of a nonresident defendant before the proper assertion of personal jurisdiction. The Alaska Supreme Court apparently follows that view. Jonz v. Garrett/Airesearch, 490 P.2d 1197, 1199 (Alaska 1971). In *Jonz* the court defined purposeful activity in terms of foreseeability that a product might find its way into the forum state. The California Supreme Court also follows the view of requiring purposeful activity, except that California has diminished the impact of the requirement by equating purposeful activity to engaging in economic activity within the forum state as a matter of commercial actuality. Buckeye Boiler Co. v. Sup. Ct. of Los Angeles County, 71 Cal.2d 893, 80 Cal. Rptr. 113, 458 P.2d 57, 64 (1969). The court in that case indicated that the only way a defendant may show lack of purposeful activity in a situation involving an isolated transaction was for that defendant to establish conclusively a complete lack of foreseeability that the product would enter the state. Buckeye Boiler Co. v. Sup. Ct. of Los Angeles County, *supra*, 80 Cal.Rptr. 113, 458 P. 2d 65.

This court agrees that *Hanson* creates a prerequisite to assertion of personal jurisdiction. Whether under the foreseeability test of *Jonz*, or under the economic activity test of *Buckeye Boiler*, it is clear that the defendants have engaged in purposeful activity with the State of Alaska. Referring again to the deposition of Mr. White, it is admitted by the defendants that at the time of the transaction with Mr. Gildersleeve, defendants had actual knowledge that the aircraft would be flown to and used in Alaska. These defendants had transacted business with "drop-in" Alaskan

residents, including Mr. Gildersleeve, for over ten years. It is inconceivable that defendants could deny being engaged in economic activity within Alaska as a matter of commercial actuality, or that defendants could deny actual knowledge that the aircraft would find its way to Alaska.

As further indicated in *Buckeye Boiler Co.*, once the threshold question of sufficient activity by the defendants has been resolved, the propriety of asserting personal jurisdiction is determined by an interest analysis involving:

. . . [A] balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interests of the state in assuming jurisdiction. . . . In other words . . . the question of propriety of subjecting the defendant to the jurisdiction of the forum involves both a consideration of fairness and a determination of whether, from a standpoint of logical and orderly distribution of interstate litigation, the forum state is what Professor Ehrenzweig has termed a "forum conveniens." Buckeye Boiler Co. v. Sup. Ct. of Los Angeles County, *supra*, 80 Cal.Rptr. 118, 458 P.2d 62.

The court in *Buckeye Boiler* discussed the various interests involved. It noted the interest of the forum state in providing its residents with a means to seek redress for injuries. That case also mentioned the interest of the forum state in asserting jurisdiction where most of the evidence is within its borders, and the choice of law principles dictate the application of local law to major issues. Further, the court specified the interest of the plaintiff in obtaining a remedy in a local court, particularly where the plaintiff is relatively impecunious or the plaintiff for some reason is unable to obtain redress in the courts of the defendant's state. The court also referred to the interest of the forum state and the plaintiff in avoiding multiple litigation. Buckeye Boiler Co.

v. Sup. Ct. of Los Angeles County, *supra*, 80 Cal.Rptr. 113, 458 P.2d 62.

Despite the incomplete state of the record here, it appears that the interests of the State of Alaska and the plaintiff outweigh any inconvenience which defendants may suffer as a result of the requirement to defend this suit in Alaska. The record does not reflect with specificity the relative economic size of the parties, nor the relative distribution of witnesses and exhibits between those located in Alaska and those in Washington. However, the record indicates a strong interest of the plaintiff to litigate this cause against defendants in this forum. If these defendants were dismissed from this action, plaintiffs would be unable to seek redress in the State of Washington for the reason the Washington statute of limitations has expired. R.C.W. 23A.28.250.

Under these circumstances, defendants must show some extreme inconvenience in defending this action in this forum before the court may grant the motion to dismiss. The record contains no information which leads this court to believe that defendants may suffer extreme inconvenience in defending his action in Alaska. Accordingly the motion to quash summons and complaint and to dismiss will be denied.

Concerning defendants' motion to quash the supplemental memorandum in opposition to the motion to quash summons and complaint and to dismiss, the court agrees that Rule 5(B), General Rules of the United States District Court for the State of Alaska does not permit the filing of the supplemental memoranda without leave of court. However, the court will treat the motion as one to strike the supplemental memorandum as provided by Fed.R.Civ.P. 12(f).

Therefore, it is ordered:

1. That defendants' motion to quash service of summons and complaint and to dismiss is denied.

2. That defendants' motion to strike the supplemental memorandum is granted.