**KENNECORP MORTGAGE & EQUITIES, INC. and Kennecorp Enterprises, Inc., Appellants,**

v.

**FIRST NATIONAL BANK OF FAIRBANKS, Appellee.**

No. 6696.

Supreme Court of Alaska.

June 29, 1984.

Stephen F. Frost and David E. Grashin, Law Offices of Stephen F. Frost, Anchorage, James E. Moan, Lydy, Moan & Douglas, Toledo, Ohio, for appellants.

Ronald G. Birch and Marc W. June, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and CARPENETI, Superior Court Judge.*

## OPINION

CARPENETI, Superior Court Judge.

This case raises questions concerning the proper scope of AS 09.05.015, Alaska's long-arm statute, in the context of a default judgment. Appellants are two Ohio corporations, a holding company and its wholly-owned subsidiary, which moved to set aside a default judgment entered against them. They appeal from the superior court's refusal to set aside the default judgment.

## FACTS

In 1978, Sailor J. Kennedy, a resident of Ohio, travelled to Alaska to discuss the possibility of doing business with the First National Bank of Fairbanks ("the bank"). Kennedy was then the president and chairman of Kennecorp Enterprises, Inc. ("KEI"), a holding company, as well as the president and chairman of Kennecorp Mortgage & Equities, Inc. ("KMEI"), a wholly-owned subsidiary of KEI. The business of KMEI is mortgage lending, the buying and selling of properties, and the placing of loan participations for financial and banking institutions. Kennedy and the two cor-porations have maintained that he represented only KMEI on his trip to Alaska, a position not directly challenged by the bank and deemed admitted for the purposes of this appeal.

Either while in Alaska or after his return to Ohio, Kennedy apparently solicited a line of credit from the bank on behalf of KMEI.[1] While he disputes that he solicited credit from the bank, it is undisputed that after his return to Ohio the bank wrote to KMEI, through Kennedy, that "the loan committee ... has approved *your request* for a $350,000 line of credit" (emphasis added), and that KMEI, through Kennedy, accepted the bank's letter of commitment subject to only one change not relevant to this point.

Shortly after the line of credit was approved, KMEI began to draw upon it. Within one month approximately $335,000 was disbursed to KMEI. The promissory note which secured the line of credit was due to be repaid October 19, 1979. No payment was made on the note by that date, and the collateral which had been used to secure the note proved to be non-existent. In July 1980, the bank demanded payment on the note. None was ever made.

## PROCEDURAL HISTORY

On August 11, 1980, the bank sued Kennedy, KEI, KMEI, and Apartment World, Inc., the assignor of a note to KMEI which KMEI had offered as collateral for the $350,000 line of credit. Only KMEI and KEI remain as defendants in this case.[2] The complaint was sent by mail to the defendants in Ohio, and was received on

---

* Carpeneti, Superior Court Judge, sitting by assignment made pursuant to Article IV, section 16 of the Constitution of Alaska.

1. The bank's internal loan documents, which are constructed by the bank in reliance on information supplied by the prospective buyer, identify the borrower as KEI and recite the history, credit rating, accounting procedures, etc., of KEI. The commitment, however, was to KMEI, and the promissory note was signed by Kennedy as Chairman of KMEI.

2. Kennedy was dismissed as a defendant upon plaintiffs' motion pursuant to Civil Rule 41(a) after this court reversed the trial court's refusal to set aside the default judgment taken against Kennedy. *Kennedy v. First Nat'l Bank of Fairbanks,* 637 P.2d 297 (Alaska 1981).

 Apartment World, Inc. was dismissed as a defendant upon plaintiffs' Notice of Dismissal By Plaintiff Before Answer pursuant to Civil Rule 41(a).

August 21. On September 9, defendants Kennedy, KEI and KMEI mailed a motion to the court seeking an extension of time in which to file an answer. Two days later, before the motion was received in Anchorage, the bank moved for a default judgment at a hearing before Judge Victor Carlson. After hearing the testimony of a bank officer, the court entered default judgment against Kennedy, KEI and KMEI. The defendants' motion for an extension of time arrived on September 15. It was denied the next day by Judge Carlson.

On November 18, Kennedy moved *pro se* to set aside the default judgment under Civil Rule 60(b). Judge J. Justin Ripley denied Kennedy's motion, after which Kennedy appealed to this court. That appeal was successful. See note 2, *supra.*

KEI and KMEI also moved to set aside the default judgment in November 1980, but their motion was stricken by Judge Ripley for failure to comply with Civil Rule 81: It had been filed by an attorney not admitted to practice law in Alaska. KEI and KMEI then took no action in Alaska for a period in excess of a year. They did, however, vigorously contest the enforceability of the Alaska judgment in Ohio. The Ohio trial court eventually upheld the validity of the Alaska judgment and was affirmed on appeal to that state's court of appeals.

Shortly thereafter, this court granted relief to Kennedy. The corporate defendants then moved for relief from judgment in the trial court in Alaska, in effect renewing their earlier motion to set aside the default judgment. That motion was heard by Judge Brian Shortell, who denied the defendants' motion. This appeal followed.

## ANALYSIS

*Civil Rule 60(b)(4)*

■ Appellants first challenge the trial court's refusal to set aside the default under Civil Rule 60(b)(4). That rule provides as follows:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(4) the judgment is void . . . .

Rule 60 additionally requires that a motion brought under it "shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after" the judgment. In reviewing the denial of a Rule 60(b)(4) motion, this court does not defer to the discretion of the trial court: "[N]o question of the lower court's discretion is presented by a Rule 60(b)(4) motion because the validity of a judgment is strictly a question of law." *Aguchak v. Montgomery Ward Co.,* 520 P.2d 1352, 1354 (Alaska 1974).

■ Before addressing the motion on the merits, the bank challenges the Rule 60(b)(4) attack as untimely. The bank's objection is not well taken. As noted by Wright & Miller, a Rule 60(b)(4) motion "differs markedly from motions under the other clauses of Rule 60(b). There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4). . . . [T]here is no time limit on an attack on a judgment as void." 11 C. Wright & A. Miller, Federal Practice and Procedure § 2862 at 197 (1973). The authors note that even the requirement that the motion be made within a reasonable time, "which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion." *Id.*

Turning to the substantive Rule 60(b)(4) issues, appellants include several points under the general argument that the judgment is "void". At the outset, it is important to remember what this court has said is meant by the term:

A judgment is void where the state in which the judgment was rendered had no jurisdiction to subject the parties or the subject matter to its control, or where the defendant was not given proper notice of the action and opportunity to be

heard, or where the judgment was not rendered by a duly constituted court with competency to render it, or where there was a failure to comply with such requirements as are necessary for the valid exercise of power by the court.

*Holt v. Powell*, 420 P.2d 468, 471 (Alaska 1966) (footnotes omitted). *See also Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974) (judgment void if court lacked personal jurisdiction over defendant or if court acted in manner inconsistent with due process of law). Unless appellants can show that this case satisfies one or more of those conditions, they cannot prevail on their Rule 60(b)(4) attack.

■ Appellants argue first that the judgment was void because a "timely response" had in fact been filed. In fact, KEI and KMEI were late in filing an *answer*. Appellants argue that "filing a motion for extension of time constituted an answer sufficient to preclude default judgment." That position is untenable. First, such a motion is not an answer. Second, as with any motion, it may be granted or denied. Here, the motion was denied by Judge Carlson, and there is no showing that such denial constituted an abuse of his discretion. Third, the motion itself was late, having been received after the default judgment was entered. The assertion of

KEI and KMEI that the procedure followed in this case violated their right to due process of law was answered by this court in *Allen v. Bussell*, 558 P.2d 496, 502–03 (Alaska 1976), where this court rejected a due process argument similar to that proposed in the instant case.

■ The next Rule 60(b)(4) argument of KEI and KMEI is that the judgment was void because it was entered in a way that denied defendants due process of law. This argument, too, may be rejected out of hand. It is predicated on the belief that the default judgment was entered before the time to answer had run. It was not. Certainly, the trial court had discretion to set aside the default judgment given the procedural posture of the case. However, a court's failure to exercise its discretion in favor of a party cannot be equated with a denial of that party's due process rights. That is what appellants attempt to do here.

■ Finally, appellants argue that the judgment was void because the trial court lacked personal jurisdiction over KMEI and KEI. This is the only argument which requires extended discussion.[3]

Jurisdiction over these parties, if it is to be found, must be found in AS 09.05.015, Alaska's long-arm statute.[4]

.3. The trial court did not address this issue beyond the statement that it had jurisdiction. Hence, this court has not had the benefit of that court's reasoning in this regard. In any event, we may uphold the trial court if any basis for doing so appears from the record. *See Carlson v. State*, 598 P.2d 969, 973 (Alaska 1979).

4. AS 09.05.015 provides in relevant part:

(a) A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure

. . . . .

(3) in an action claiming injury to person or property in or out of this state arising out of an act or omission in this state by the defendant;

. . . . .

(5) in an action which

. . . . .

(C) arises out of a promise, made anywhere to the plaintiff or to some third party for the

plaintiff's benefit, by the defendant to deliver or receive in this state or to ship from this state goods, documents of title, or other things of value; [or]

(D) relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the order or direction of the defendant;

. . . . .

(6) in an action which arises out of

(A) a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to create in either party an interest in, or to protect, acquire, dispose of, use, rent, own, control or possess by either party real property situated in this state; [or]

. . . . .

(C) a claim that the defendant return, restore, or account to the plaintiff for an asset or thing of value which was in this state at the time the defendant acquired possession or control over it. . . .

This court has construed Alaska's long-arm statute as a "broad one which we regard as an attempt by the legislature to establish jurisdiction to the maximum extent permitted by due process." *Jonz v. Garrett/Airesearch Corp.*, 490 P.2d 1197, 1199 (Alaska 1971). The analysis adopted in *Jonz* consists of two steps: First, there must be a determination whether a case is encompassed by AS 09.05.015. If the answer is yes, then the court must consider whether application of the statute would offend due process. We shall apply this analysis separately to the two defendants involved in this case.

### KMEI

 Two subsections of Alaska's long-arm statute encompass the activity of KMEI involved here. Subsection (a)(3) applies "in an action claiming injury ... to property in or out of this state arising out of an ... omission in this state by the defendant." The omission of KMEI was its alleged failure to make the promissory note payments which were owed in this state to the plaintiff bank. Consistent with this court's decision in *Jonz*, that this long-arm statute is a "broad one", we construe the term "injury to property" to include pecuniary losses. *Accord Fairbanks Air Service, Inc. v. Air Operations International Corp.*, 378 F.Supp. 1405, 1406 (D.Alaska 1974). Thus, the loss of assets which the bank claims in this case is an injury to its property arising out of the defendant's omission; it therefore satisfies the terms of subsection (a)(3).

 Subsection (a)(5)(D) is also applicable. That provision covers cases relating to "things of value shipped from this state by the plaintiff to the defendant on the order or direction of the defendant." By drawing on the bank's line of credit, KMEI caused the bank's funds to be transferred from Alaska to Ohio. For purposes of subsection (a)(5)(D), this act by the defendant constituted an order or direction to the bank to ship a thing of value out of state to the defendant.

 Having found that the long-arm statute is applicable to KMEI, we next consider the restraints on jurisdiction imposed by due process. The assertion of jurisdiction is proper if the record demonstrates that KMEI had minimum contacts with Alaska "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)). In making this determination, we have emphasized the "quality rather than the quantity of the [defendant's] contacts." *Jonz*, 490 P.2d at 1199 (citing *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 103–04).

 The primary inquiry in evaluating a nonresident defendant's contact with the forum state is a consideration of the defendant's purposeful activity with respect to that state. As explained by the United States Supreme Court, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 254, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958), *quoted in Modern Trailer Sales, Inc. v. Traweek*, 561 P.2d 1192, 1196 (Alaska 1977). The record in this case demonstrates that KMEI had purposeful contact with this forum in several respects. Kennedy travelled to Alaska as a representative of KMEI to negotiate a business arrangement with the plaintiff, an Alaska corporation. At some point in his dealings with the plaintiff, he solicited a line of credit, executed the necessary papers, and mailed them to Alaska. The promissory note resulting from these negotiations concerned real property in Alaska. Furthermore, the note itself provided that it would be "governed by the law of the state of Alaska." Finally, Kennedy accepted an appointment by the bank as its exclusive agent for the forty-eight contiguous states and apparently agreed to seek out Alaska

loans for the bank. These factors demonstrate that KMEI planned a close, long-term association with the bank. There is no question that through such activity, the defendant purposefully availed itself of the privilege of conducting a business relationship with this forum and thereby invoked the benefits and protections of Alaska laws.

If the claim involved in this case had arisen from actions of the defendant which were distinct from its forum-related activity, an assertion of personal jurisdiction would only be appropriate if the defendant's forum-related activity was "substantial" or "continuous and systematic". *International Shoe*, 326 U.S. at 317–18, 66 S.Ct. at 158–59, 90 L.Ed. at 102–03; *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981). In the present case, however, plaintiff's claims arise solely from KMEI's forum-related activities. Thus, it is not necessary for this court to determine whether the defendant's contacts with Alaska rose to the higher standard of being "substantial" or "continuous and systematic".

■ The final inquiry required by due process is whether an exercise of jurisdiction over this defendant is reasonable. This factor was recognized in *International Shoe*, where the United States Supreme Court stated that the demands of due process

> may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An "estimate of the inconveniences" which would result to the corporation from a trial away from its "home" or principal place of business is relevant in this connection.

---

5. A forum state's interest in adjudicating the dispute has been widely recognized as a relevant factor in determining the "reasonableness" of an assertion of jurisdiction over nonresident defendants. *World-Wide Volkswagen Corp. v.*

326 U.S. at 317, 66 S.Ct. at 158, 90 L.Ed. at 102. This court has also referred to the doctrine of "estimate of inconveniences" as one of the relevant criteria for proper assertion of jurisdiction over a nonresident defendant. *Stephenson v. Duriron Co.*, 401 P.2d 423, 429 (Alaska 1965).

In *Volkswagenwerk, A.G. v. Klippan, GmbH*, 611 P.2d 498 (Alaska 1980), we rejected a foreign defendant's claim that subjecting it to suit in Alaska would be so unreasonable as to deny it due process. The parties involved in *Volkswagenwerk* were two American and two German corporations, and the evidence which was relevant to the dispute was located in both Germany and Alaska. The original automobile collision which spawned the litigation, however, had occurred in this state. While recognizing that "[i]nconvenience to at least some parties will probably be associated with litigation in either this jurisdiction or the German forum," we concluded that, "[u]nder these circumstances, Alaska's jurisdictional power must be upheld despite claims of inconvenience and unreasonableness by [the nonresident defendant]." 611 P.2d at 502.

■ Our conclusion in the present case is similar. The hardships on the parties from litigating this case in Alaska or Ohio appear to be relatively balanced: witnesses, documents and evidence are located in both forums. The negotiations, however, which formed the basis of the business relationship between these parties, and subsequently led to the present dispute, occurred within this state. Furthermore, Alaska has an interest in resolving disputes which concern its resident corporations and in providing its residents with a means for convenient and effective relief.[5] It is therefore reasonable to allow the present case to be heard in Alaska, and KMEI's resulting inconvenience is not sufficient to constitute a denial of due process.

---

*Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957).

In conclusion, the exercise of jurisdiction over KMEI comports both with the requirements of Alaska's long-arm statute and with the demands of due process. Accordingly, we reject the claim that the trial court lacked personal jurisdiction over this defendant.

### KEI

The situation with regard to KEI, the parent corporation, is different. It is not possible to fit what KEI is alleged to have done under even the expansive umbrella of our long-arm statute. Appellee argues that jurisdiction may be based upon any of five different subsections of AS 09.05.015,[6] but for the reasons set out below, none of the cited provisions provides a jurisdictional basis for proceeding against KEI.

 AS 09.05.015(a)(3) requires "an act or omission in this state by the defendant." There was no such act. KEI did not sign any of the loan agreements, nor do anything else here. Nor did its alleged failure to repay the bank constitute an "omission in this state," because KEI never promised to pay the bank anything. Moreover, the "direct beneficiary" theory of the appellant's complaint is not persuasive on the record before us.[7]

AS 09.05.015(a)(5)(C)[8] and (6)(A) are not applicable because this defendant, KEI, did not make any promises to the bank. AS 09.05.015(a)(5)(D) is not applicable because the bank shipped nothing to this defendant. KMEI, not KEI, received the funds when it drew on the line of credit, and the funds were only deposited in KEI accounts after KMEI took possession of them.

 Finally, appellee relies on AS 09.05.015(a)(6)(C). This action, however, simply does not involve "an asset or thing of value which was in this state at the time the defendant acquired possession or control over it." KEI took control of the assets in question outside of Alaska: The transfer of possession from the subsidiary to its parent occurred in Ohio.

 The only way that we could find that Alaska has personal jurisdiction over KEI, given the above, would be to find that KMEI was the corporate alter ego of KEI. But it cannot be assumed that KEI and KMEI were indistinguishable parts of Kennedy's economic empire, and appellees have not listed facts which would meet the tests of corporate alter ego under *Jackson v. General Electric Co.*, 514 P.2d 1170 (Alaska 1973).[9] Under these circumstances, this

---

6. Appellee adverts to only one fact involving KEI—that money which was sent to KMEI was "deposited ... as a matter of ... standard business procedure to the account of [KEI], the corporate entity which is the sole owner of [KMEI]"—and then cites five subsections of AS 09.05.015 for the proposition that "there is no question that" Alaska has jurisdiction over KEI. No further argument or analysis is provided.

7. All significant references to KEI in the plaintiff bank's original complaint pertain to its status as "direct beneficiary" of the loan to KMEI:
 8. That draws were made on the loan by Defendant Kennecorp Mortgage & Equities, Inc. in the total amount of $334,958.83 and that the amount of a substantial number of those draws were subsequently deposited to the account of Kennecorp Enterprises, Inc.
 9. That a substantial portion of the proceeds of the loan were expended for the benefit of Defendant Kennecorp Enterprises, Inc., the result being that Defendant Kennecorp Enterprises, Inc. became a direct beneficiary of said loan and jointly and severally responsible for its repayment.

If A (in Alaska) loans money to B (in Ohio), and B spends those funds for C's benefit, these facts, standing alone, do not make C "jointly and severally responsible" for the loan's repayment.

8. See note 4, *supra,* for the text of this and other relevant portions of the statute.

9. Under *Jackson,* 514 P.2d at 1173, a court may want to know whether:
 (a) The parent corporation owns all or most of the capital stock of the subsidiary.
 (b) The parent and subsidiary corporations have common directors or officers.
 (c) the parent corporation finances the subsidiary.
 (d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.
 (e) The subsidiary has grossly inadequate capital.
 (f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.
 (g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

route to a finding of personal jurisdiction over KEI is blocked.

■ Even if this court were able to find that KEI somehow fits within the Alaska long-arm statute, it would be necessary to determine whether such an application of the statute offends due process. Has KEI established minimum contacts with Alaska "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' "? *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed.2d at 102. Looking to the quality rather than the quantity of its contacts as *Jonz* requires, 490 P.2d at 1199, did KEI engage in purposeful activity by which it availed itself of the privilege of conducting activities in Alaska, "thus invoking the benefits and protection of its laws"? *Hanson,* 357 U.S. at 254, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298. Because the bank has not established that KMEI is the alter ego of KEI, these questions must be answered in the negative.

■ It is true that the bank's internal records list KEI, not KMEI, as the potential borrower. But KEI was *not* the borrower—it did not enter into any contract with the bank—and it did not guarantee the contracts which its subsidiary, KMEI, signed. Moreover, the bank's possession of information about KEI is not an act which ties KEI to Alaska. The only way the bank could have gotten this information is through Kennedy, and the record clearly reveals that Kennedy was not acting as KEI's agent. One corporation's use of another's financial information does not, without more, show that the second corporation has any relationship with the forum state. This is especially true when, as in

this case, the second does not guarantee the first's contracts.

It is also true that the Ohio trial court's decision noted that "defendants acknowledge that payment under a line of credit was made to the defendants." (Emphasis added.) Unfortunately, the pleadings in which some defendants apparently made these admissions are not in the record, and there were three defendants, not two, litigating in the Ohio courts: KEI, KMEI, and Kennedy. "Defendants" might thus mean KMEI and Kennedy, not KMEI and KEI. In any event, this admission is inconsistent with the terms of the contracts signed by KMEI and the bank.

As the superior court observed, "The record in this case discloses procedural maneuvering by the plaintiff, who appears to have taken advantage of its in-state status and the easy access to the court [which] that status gave to obtain a quick default under circumstances that might ordinarily require setting aside the judgment." It is thus no injustice to make the bank bear the costs as well as reap the benefits of its decision to seek to have KEI and KMEI held in default. If the bank had chosen to conduct jurisdictional discovery rather than pursue defaults, it might have been able to discover facts which would support jurisdiction over KEI. As it is, we are left with two questionable facts[10] and a number of problems which discovery might have resolved.

■ These are insufficient grounds on which to conclude that either the provisions of AS 09.05.015 or the requirements of due process are satisfied as to KEI. Solicitation and contracting for loan agree-

---

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed.

While the first factor is met in the instant case, and at least part of the second (Kennedy is the president and chairman of both KEI and KMEI), the record fails to show that any of the other factors listed in *Jackson* are present here.

10. These facts are the bank's internal loan documents, which list KEI as the potential borrower, and the admission in Ohio by some defendants that they had received the bank's funds.

1242

ments was done by KMEI. The record does not show that KMEI was KEI's alter ego, and the record's incompleteness is the bank's responsibility.[11]

*Civil Rule 60(b)(6)*

■ Appellants also challenge the trial court's refusal to set aside the default under Civil Rule 60(b)(6). That rule provides that, in addition to five listed reasons for a court to relieve a party from a final judgment, it may do so for "any other reason justifying relief from the operation of the judgment." It must be brought "within a reasonable time" after the judgment is distributed. Because this rule is addressed to the sound discretion of the trial court, *Miracle v. Thompson*, 581 P.2d 666, 669 (Alaska 1978); *Nordin Construction Co. v. City of Nome*, 489 P.2d 455, 472 (Alaska 1971), the issue presented in this court is whether the trial judge abused his discretion in finding that the appellants did not act within a "reasonable time" in filing their motion, and thus in denying the motion for relief from judgment.

As noted above, a motion to set aside the default judgment was filed jointly by KMEI and KEI in November 1980. That motion was stricken in December because it failed to comply with the Alaska Rules of Civil Procedure. Neither KMEI nor KEI chose to conform to the rules and submit another motion at that time. Nor did they seek appellate review of the court's decision to strike their motion. Instead, they opted to defend against enforcement of the Alaska judgment in the Ohio courts. It was not until thirteen months later—after they had lost in Ohio and after Kennedy had prevailed in this court—that they pursued the motion to set aside the default judgment in Alaska.

Under these circumstances, the trial court's denial of the Rule 60(b)(6) motion is not an abuse of discretion. In *O'Link v. O'Link*, 632 P.2d 225, 229–30 (Alaska

1981), we quoted with approval the following passage from 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864, at 214 (1973): "The broad power granted by [Rule 60(b) ] (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests." KMEI and KEI freely, calculatedly and deliberately chose not to re-file their motion in conformity with the civil rules and not to appeal to this court. They cannot now complain that the trial court's dismissal of their motion brought well over a year later was incorrect, much less an abuse of discretion. They must live with the consequences of their own choice not to seek relief in Alaska sooner.

For the reasons set out above, the default judgment against KMEI is affirmed. Because Alaska does not have personal jurisdiction over KEI, the default judgment against KEI is set aside.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.

MOORE, J., not participating.

11. The burden of establishing that the court has personal jurisdiction over KEI is on the bank. *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 294 (Alaska 1976). On remand, the bank may be able to discover and prove facts establishing jurisdiction over KEI. Its default judgment, however, must stand or fall on the facts now in the record.