ALASKA TELECOM, INC., Petitioner,

v.

Roger A. SCHAFER, Respondent.

No. S–6159.

Supreme Court of Alaska.

Jan. 27, 1995.

William K. Walker, Law Offices of William K. Walker, Anchorage, for petitioner.

Gregory A. Miller, Law Offices of Birch, Horton, Bittner and Cherot, Anchorage, Robert W. Small, Berlinger & Small, Abington, PA, for respondent.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. pro tem.*

MATTHEWS, Justice.

This case is a review of a district court order dismissing a complaint for lack of personal jurisdiction.

## I.  FACTS AND PROCEEDINGS

Alaska Telecom, Inc. (ATI), is an Alaska corporation with its principal offices in Anchorage.  It is engaged in the business of providing telecommunications services.  In 1990, ATI contracted to provide various professional services to NOUR Trading Company in connection with the design, purchase, and installation of a telecommunications system to be located in Saudi Arabia.  In anticipation of its business with NOUR, ATI contracted with Roger A. Schafer, a Pennsylvania resident, to act as a consultant to ATI and project manager for the project.

The initial arrangement between ATI and Schafer was oral, resulting from telephone conversations between ATI's representatives in Alaska and Schafer in Pennsylvania.  The first call was made by Schafer; in all, he made eight calls to Anchorage prior to the formation of the contract.

Subsequently, Schafer was asked to meet with ATI's representatives in Alaska.  He traveled to Alaska, arriving on February 3,

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1991, and remained in Alaska until February 15, 1991. While in Alaska he signed a written contract with ATI.

The written contract contained the following non-competition clause:

14. *Non–Competition:*

A. *During Term of Employment:* During the term of this employment agreement, Consultant will not directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, officer, or in any other individual representative capacity, engage in or participate in any business that is in competition in any manner whatsoever with the business of ATI.

B. *After Termination:* On termination of this employment agreement, regardless of whether terminated by Consultant himself or by ATI, Consultant will not enter into or engage generally in direct competition with ATI, nor will Consultant participate as an individual, partner, employee, officer, director, consultant, or stockholder in any business of contract telecommunication services, with ATI's current customers, or with any future customers developed during Consultant's contract period, for a period of one (1) year from the date of Consultant's termination.

The written contract also included a choice of law clause which provided that the agreement "shall be interpreted under the laws of the Commonwealth of Pennsylvania."

Schafer billed ATI for twelve days' services performed in Alaska for $6,960.00.[1] In total, Schafer provided services from February 3, 1991, through March 31, 1991. During this time, he performed services in Alaska, Pennsylvania, Virginia, Maryland, and Canada.[2]

On or about April 1, 1991, Schafer went to work directly for NOUR. ATI claims that this violated the non-competition clause of the parties' agreement and filed a claim for damages in the district court seeking lost profits of $20,126, less an offset which would otherwise be due from ATI to Schafer for unpaid services of $7,650. Schafer filed a special appearance and moved to dismiss the complaint for lack of personal jurisdiction. The district court granted the motion and dismissed the complaint. ATI appealed to the superior court, which affirmed the decision of the district court. ATI has now petitioned for hearing to this court.[3] We grant the petition and reverse.

## II. *DISCUSSION*

The exercise of personal jurisdiction requires compliance with Alaska's long-arm

---

1. Schafer's invoices "for services" relate the following:

| Date | Location/Activities |
|------|---------------------|
| Feb 3 | Travel PHL/ANC. |
| Feb 4 | Anchorage/Project discussions; ATI, EGE, Farinon. |
| Feb 5 | Anchorage/Discussions; civil, towers, microwave, schedule shelters. |
| Feb 6 | Anchorage/EGE frequencies, power unit requirements and sources. DC plant scope-scheme. Decibel BOM review. |
| Feb 7 | Anchorage/Discussions—Research Crypto AG scope-impact. EGE progress. Shelter layout options. |
| Feb 8 | Anchorage/EGE progress, Crypto AG needs. Farinon Synchronization plus MUX DEMUX details. LARSE Alarm–Monitor System. |
| Feb 9 | Anchorage/Crypto AG, Farinon path profiles, project schedule. |
| Feb 10 | Anchorage/Crypto AG coverage, frequency planning, tower-antenna details. |
| Feb 11 | Anchorage/Details and scheduling on Harris Farinon generators. |
| Feb 12 | Anchorage/Material control discussions, shelter scenarios. |
| Feb 13 | Cost estimates, discussions and alternatives. |
| Feb 14 | EGE discussion, project schedule, Decibel products best and final kick off. |
| Feb 15 | Logistics, project budget and schedule efforts. Depart Anchorage at 1900 local. |

2. Schafer's invoices reflect the following approximate percentages of time spent in the various locations:

| | |
|----------|------|
| Alaska | 23% |
| Pennsylvania | 38% |
| Virginia | 34% |
| Maryland | 4% |
| Canada | 2% |

3. Because the district court judge considered matters outside the pleadings, the motion will be treated as one for summary judgment under Civil Rule 56.

In reviewing a grant of summary judgment, this court "must determine whether a genuine

statute, AS 09.05.015, and a determination that application of the statute does not offend due process.

### A. Alaska's Long–Arm Statute

■ Alaska's long-arm statute, AS 09.05.015, lays out a list of circumstances under which personal jurisdiction may be exercised.[4] Significantly, this list is not exclusive. Alaska Statute 09.05.015(c) provides: "The jurisdictional grounds stated in (a)(2)–(10) of this section are cumulative and in addition to any other grounds provided by the common law." By inserting this section into the statute, the legislature manifested its intent to have the long-arm statute be co-extensive with the Fourteenth Amendment.[5]

■ Even though personal jurisdiction requires compliance with both the long-arm statute and due process concerns, the fact that the long-arm statute is co-extensive with the Fourteenth Amendment does not make the statute gratuitous. The state's long-arm statute provides an authoritative basis for simplifying most jurisdictional questions. By furnishing a list of specific grounds providing jurisdiction, the state avoids converting every jurisdictional issue into a constitutional question. *See* Jack H. Friedenthal et al., *Civil Procedure* § 3.12, at 140 (2d ed. 1993). Thus, in most cases, jurisdictional issues can be resolved quickly without much discussion. Borderline cases, raising due process concerns, are oftentimes more difficult to assess.

■ Given the catch-all subsection (c), any case that does not fit easily within the grounds explicitly described in the previous subsections can stand as well upon the "grounds provided by the common law." AS 09.05.015(c). This court has consistently construed Alaska's jurisdiction to reach to the maximum extent permitted by the due process clause of the Fourteenth Amendment: "This court may exercise jurisdiction under Alaska's long-arm statute to the maximum extent permitted by due process under the federal constitution." *Glover v. Western Air Lines, Inc.,* 745 P.2d 1365, 1367 (Alaska 1987). *See also American Nat'l Bank v. International Seafoods,* 735 P.2d 747, 749 (Alaska 1987); *Kennecorp Mortgage v. First Nat'l Bank,* 685 P.2d 1232, 1238 (Alaska 1984). Thus, in context, the statutory catch-all clause refers to cases in which the exercise of jurisdiction is permissible under the Fourteenth Amendment.

Arguably, jurisdiction is authorized in this case by subsection (a)(5)(A). This subsection provides jurisdiction in an action arising out

---

issue of material fact exists and whether the moving party is entitled to judgment as a matter of law." *Saddler v. Alaska Marine Lines, Inc.,* 856 P.2d 784, 787 (Alaska 1993). All reasonable inferences of fact must be drawn in favor of the non-moving party. *Wright v. State,* 824 P.2d 718, 720 (Alaska 1992).

4. ATI claims that this case falls within subsections (a)(5)(A) and (B). These subsections provide:

   (a) A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure....
   (5) in an action that
   (A) arises out of promise, made anywhere to the plaintiff ... by the defendant to perform services in this state ...;
   (B) arises out of services actually performed for the plaintiff by the defendant in this state....

5. Alaska's long-arm statute, introduced as House Bill No. 16, was enacted by the 1967 legislature.

It was patterned after the Wisconsin long-arm statute, W.S.A. 262.05 (Recodified in 1975 as W.S.A. 801.05): "HOUSE BILL NO. 16 is taken from Sec. 262.05 of the Wisconsin Statutes (1964)." 1967 House Journal 39.

Wisconsin intended its long-arm statute to be co-extensive with the Fourteenth Amendment. The Alaska Judiciary Committee's report quotes from Wisconsin's declaration of objectives: "[The statute] provide[s] a means for trying in Wisconsin *all personal actions which, in a due process sense, it is reasonable to try here against the named defendant." Id.* (emphasis added).

Interestingly, Wisconsin's long-arm statute did not have a clause similar to Alaska's "catch-all" clause. This unique clause was inserted by the Senate as an amendment to House Bill No. 16. 1968 House Journal 781–82. It was approved subsequently by both the Senate and the House, providing further evidence that the legislature intended the long-arm statute to reach as far as permissible under the Fourteenth Amendment.

of a promise made to a plaintiff by a defendant to perform services in Alaska. *See supra* note 4. Because of the unique nature of the alleged contract violation, however, this case is not easily categorized.[6] Thus, we find it more appropriate to examine jurisdiction using the standards set by subsection (c), that is, due process.

### B. *Due Process Requirements*

■ This court outlined in *Glover* the current framework for determining the limits of jurisdiction under the due process clause:

> Due process permits the assertion of jurisdiction over a defendant in any state with which the defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" In essence, jurisdiction may be asserted when it is found that the defendant's contacts with the forum are substantial enough that the defendant could reasonably anticipate being haled into court in that forum. The defendant's contacts with the forum should be found sufficiently substantial whenever a defendant has maintained "continuous and systematic general business contacts" with the forum state. When a controversy is "related to" or "arises out of" a defendant's contacts with the forum, the exercise of jurisdiction is said to be "specific" and is justified on the basis of the relationship among the defendant, the forum, and the litigation. Even where the cause of action does not "relate to" or "arise out of" the defendant's contacts with the forum, however, "general" jurisdiction may be asserted if there are sufficient generalized contacts between the state and the defendant.

745 P.2d at 1367 (citations omitted). Thus, due process analysis asks two questions: first, whether minimum contacts exist; second, whether maintenance of the suit is consistent with traditional notions of fair play and substantial justice.

### 1. Minimum Contacts

■ This case involves "specific" jurisdiction, as ATI's claim is one for breach of a contract which Schafer signed and partially performed in Alaska. In such cases, the requirement that a defendant be able to reasonably anticipate suit in a particular forum "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries 'that arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citations omitted). An individual's contract with an out-of-state party taken alone does not "automatically establish sufficient minimum contacts in the other party's home forum." *Id.* at 478, 105 S.Ct. at 2185. The contract along with such other factors as "prior negotiations and future consequences ... and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. at 2185.

One commentator has suggested that a single contract plus one other contact with the forum state is sufficient to establish jurisdiction:

> Single contract cases are difficult and have evenly divided the courts. Add to any one of these cases a significant additional contact, a personal appearance by the defendant in the forum state to negotiate, solicit, or facilitate the deal, and most courts will immediately breathe a sigh of relief and uphold jurisdiction. In so doing, courts need not also decide how weighty a contact a personal appearance to solicit or negotiate is, or whether it is as significant a contact as a personal local performance. They only need conclude that both contacts are sufficient to resolve the jurisdictional question.

Martin B. Louis, *Jurisdiction Over Those Who Breach Their Contracts: The Lessons of Burger King*, 72 N.C.L.Rev. 55, 75 (1993).

---

**6.** Because the promise at issue here is a promise not to compete, it is not immediately apparent where performance will take place. But since the violation might occur anywhere, performance may be understood as being worldwide in scope—including Alaska.

■ In this case, Schafer established numerous contacts with the state—not just one—in addition to that of forming a contract with an Alaskan. He solicited a contract with an Alaskan entity; negotiated with ATI representatives by telephone between Alaska and Pennsylvania; executed the written contract in Alaska; performed a significant portion of his services in Alaska; mailed his invoices to Alaska for payment; and was paid by checks drawn on an Alaskan bank.

Furthermore, this litigation directly relates to the contract. In the contract, Schafer agreed not to compete with ATI by working independently for ATI's customers. If the complaint's allegations are true, Schafer breached the contract and damaged ATI by entering into a direct contractual relationship with one of those customers.

For these reasons, sufficient minimum contacts exist in Alaska such that jurisdiction consistent with due process can be exercised over Schafer.

### 2. "Fair Play and Substantial Justice"

■ After it has been determined that a defendant purposefully established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. In a case such as the one before the court, where a defendant who has purposefully directed his activities at forum residents seeks to defeat jurisdiction, the defendant must present a compelling case that certain considerations render jurisdiction unreasonable. *Id.* at 477, 105 S.Ct. at 2184–85.

■ Schafer contends that when the contract was formed the parties did not contemplate that he would do any work in Alaska. Accepting this as true merely means that the factor of expected performance in the forum state is lacking, not that jurisdiction cannot be exercised. As *Burger King* makes clear, the actual course of contract performance is also a relevant factor, *id.* at 479, 105 S.Ct. at 2185–86, and it is present in this case.

■ Also, the fact that the parties agreed that the contract was to be interpreted under Pennsylvania law does not mean that Alaska lacks jurisdiction. In *Burger King,* the forum state's law governed. Yet this factor played only a minimal role in the court's decision. Louis, *supra,* at 87. More importantly, the choice of law provision does not negate the significance of substantial contacts with Alaska with respect to this dispute. *See Volkswagenwerk v. Klippan,* 611 P.2d 498 (Alaska 1980) (Alaska had jurisdiction as a matter of due process even though forum selection clause required suit in another country).

Nor is jurisdiction likely to be especially burdensome to Schafer. The court in *Burger King* stated that, "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (citation omitted). Schafer, in his conduct with ATI, demonstrated that doing business with an Alaskan entity was not, for him, particularly burdensome. He can now hardly put forth the proposition that responding to a lawsuit in Alaska is unreasonably burdensome.

### III. *CONCLUSION*

Schafer's alleged breach of his promise with ATI, along with other contacts made with Alaska, satisfies the "catch-all" subsection (c) of the state's long-arm statute. These contacts are sufficient to establish the minimum contacts required by due process; personal jurisdiction in this case comports with fair play and substantial justice.

REVERSED and REMANDED.