**Don JONZ, Appellant,**

v.

**GARRETT/AIRESEARCH CORP. et al.,
Appellees.**

**No. 1441.**

Supreme Court of Alaska.

Nov. 30, 1971.

H. Bixler Whiting, Fairbanks, for appellant.

Stephen S. DeLisio, Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellees.

Before BONEY, C. J., and CONNOR and ERWIN, JJ.

### OPINION

BONEY, Chief Justice.

On October 31, 1969, a Hamilton Turboliner aircraft leased by Don Jonz from Greyhound Leasing and Financial Corporation crashed on Alaska's North Slope. In May of 1970, Jonz filed suit against Greyhound Leasing, Hamilton Aircraft Corporation, and Garrett/Airesearch Corporation. The cause of action was based upon negligent manufacture and design of the aircraft and its engines and upon breach of warranty.[1]

1. Hamilton Aircraft Corporation manufactured the aircraft; Garrett/Airesearch Corporation manufactured the engines. Jonz claimed damages for the total loss

Hamilton Aircraft Corporation is an Arizona corporation and is not authorized to do business in Alaska. Service was accomplished upon Hamilton Aircraft and the other out of state defendants by serving copies of the summons and complaint upon the clerk for the Commissioner of Commerce of the State of Alaska.[2] Hamilton Aircraft entered a "special appearance"[3] solely to challenge jurisdiction and filed a motion to set aside the service.[4] The superior court granted the motion to set aside the service and ordered a dismissal of the suit against Hamilton Aircraft. Don Jonz has appealed from that ruling.

 We believe the superior court erred in setting aside the service of process on Hamilton Aircraft Corporation. The exercise of personal jurisdiction over Hamilton Aircraft is proper under Alaska's long arm statute and is consistent with due process.

AS 09.05.015(a) (4) (A) and (B) provide:

(a) A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure

\* \* \* \* \* \*

(4) in an action claiming injury to person or property in this state arising out of an act or omission out of this state by the defendant, provided, in addition, that at the time of the injury either

(A) solicitation or service activities were carried on in this state by or on behalf of the defendant; or

(B) products, materials or things processed, serviced or manufactured by the defendant were used or consumed in this state in the ordinary course of trade; \* \* \*

The injury out of which this lawsuit arose occurred in Alaska; the allegedly negligent or defective manufacture by Hamilton Aircraft occurred in Arizona. Gordon B. Hamilton, president of Hamilton Aircraft Corporation, testified in his deposition that Hamilton Aircraft advertised its products in several aviation publications having national or worldwide circulation. Some, if not all, of these publications were distributed in Alaska.[5] Hamilton Aircraft also had arrangements with several individuals and companies who were to receive commissions on sales of Hamilton airplanes for which they found buyers. John Kupka and Charlotte Aircraft Corporation were known by Hamilton Aircraft to have solicited buyers in Alaska for Hamilton airplanes, although no sales were ever consummated as a result of these activities.[6]

---

of the aircraft, for loss of seven months' insurance premiums, for loss of revenue, and for loss of business reputation. No physical injuries were claimed.

2. AS 10.05.642 provides in part:
 When a foreign corporation \* \* \* not authorized to transact business in the state but doing so, fails to appoint or maintain a registered agent in the state \* \* \* the commissioner [of commerce] is an agent upon whom process, notice, or demand may be served.

3. Hamilton Aircraft Corporation inaccurately characterized its appearance as a "special appearance". The Alaska Rules of Civil Procedure, modeled after the Federal Rules of Civil Procedure, incorporate the Federal Rules' abolition of the distinction between special and general appearances. See 5 C. Wright & A. Miller, Federal Practice and Procedure

§ 1344 n. 47 (1969); 5 Cyclopedia of Federal Procedure § 15.470 n. 17 (3d ed. 1968); 2A J. Moore, Federal Practice ¶ 12.12 nn. 15–17 (2d ed. 1968).

4. Defendants Garrett/Airesearch and Greyhound Leasing and Financial Corporation have not attacked the jurisdiction of the court.

5. Gordon Hamilton stated in his deposition that Jonz had first contacted him with regard to the purchase of a Hamilton Turboliner in response to an advertisement which Hamilton Aircraft had placed in *Business and Commercial Aviation*, an aviation trade magazine.

6. Hamilton Aircraft's arrangement with John Kupka was an informal one. Its arrangement with Charlotte Aircraft Corporation, however, was in the nature of an exclusive sales contract. Charlotte agreed to purchase and resell Hamilton

The Hamilton Turboliner that Don Jonz leased had first been sold by Hamilton Aircraft to Priority Air Transport in March of 1969.[7] Priority Air Transport had operated this airplane on the North Slope. Another Hamilton Turboliner was owned by Ortner Air Service, and was leased to a company that operated the airplane in Alaska. Hamilton Aircraft knew that both of these airplanes were being operated in Alaska.[8]

The solicitation activities carried on by or on behalf of Hamilton Aircraft in Alaska and the known use in Alaska of two of the Hamilton manufactured Turboliners in the ordinary course of trade provided a sufficient basis for obtaining personal jurisdiction under the terms of Alaska's long arm statute. We note that Alaska's long arm statute is a broad one which we regard as an attempt by the legislature to establish jurisdiction to the maximum extent permitted by due process.[9] Having concluded that the present case was encompassed by the terms of our statute, we turn to a consideration of whether the application of the statute would offend due process. The United States Supreme Court has in-

structed us that due process is satisfied when a nonresident defendant has established minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "[10]

 In determining whether a nonresident defendant has established minimum contacts with Alaska such that due process would not be offended by the exercise of personal jurisdiction, we emphasize the quality rather than the quantity of the contacts.[11] The occurrence of an injury in Alaska allegedly caused by an act or omission by a defendant outside of Alaska is itself a contact with Alaska. While such a contact is not sufficient, taken alone, to establish minimum contacts with Alaska,[12] very little by way of additional contacts need be shown to satisfy due process.[13]

Hamilton Aircraft Corporation is engaged in the manufacture of airplanes and does not seriously maintain that all of its airplanes were intended to remain in Arizona. Hamilton Aircraft should have known that one or more of its airplanes might be flown in Alaska,[14] and in fact

Aircraft's entire line of Turboliners as they were manufactured.

7. Priority Air sold the Turboliner to Greyhound Leasing which then leased it to Jonz. Jonz had been dealing directly with Priority, and the lease with Greyhound was apparently a financing arrangement.

8. Although the record is not entirely clear on this point, it appears that the Turboliner purchased by Ortner was the first one produced by Hamilton Aircraft, and the one purchased by Priority Air Transport in March of 1969 was the second.

9. In Northern Supply, Inc., v. Curtiss-Wright Corp., 397 P.2d 1013, 1016–1017 (Alaska 1965), this court construed the words "transact business" in AS 10.05.642 "as encompassing all those activities which would subject a foreign corporation to the jurisdiction of our courts when measured by the outer limits of the due process clause of the federal constitution." See also, Stephenson v. Duriron Co., 401 P.2d 423 (Alaska 1965). In Flambeau Plastics Corp. v. King Bee Mfg. Co., 24 Wis.2d 459, 129 N.W.2d 237, 240 (1964), the Wisconsin Supreme Court

stated that its long arm statute (from which Alaska's was taken)
> was intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with the requisites of due process of law.

10. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945).

11. Id. at 319, 66 S.Ct. at 90 L.Ed. at 103–104.

12. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958), requires that the defendant must have purposefully availed itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

13. Jones Enterprises, Inc. v. Atlas Service Corp., 442 F.2d 1136, 1139 (9th Cir. 1971).

14. In Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5th Cir. 1969), the court held that Eyerly Aircraft should have known that a carnival ride that it had manufac-

actually knew that Priority Air Transport was using its Turboliner in Alaska. It knew as well in May of 1969 that Don Jonz would be taking possession of this Turboliner and would continue to operate it in Alaska.[15] We believe that this knowledge, when coupled with the additional contact of the occurrence of the injury in this state, is sufficient to establish minimum contacts with Alaska.[16]

The order of the superior court is reversed and this case is remanded for further proceedings consistent with this opinion.

DIMOND and RABINOWITZ, JJ., not participating.

tured some twenty years before the accident in question would find its way into the forum state. The court stated:

The carnivals which purchase Eyerly's rides frequently do not have fixed loci and are often fun and thrill dispensing nomads which itinerate from place to place. Given the multistate kinetics of its products and its engagement in world-wide trade, we assert, without chauvinistic overtones, that Eyerly Aircraft should expect that the stream of interstate commerce would bring its products to Texas. 414 F.2d at 597.

The same may certainly be said for airplanes.

15. In April or May of 1969, Priority Air Transport sent the Turboliner to Hamilton Aircraft's Tucson plant for relicensing and for an annual inspection. Priority instructed Hamilton Aircraft to repaint the aircraft with the colors and insignia of Pan Alaska Airways, the company owned and operated by Don Jonz, and Jonz himself requested that Hamilton Aircraft install additional radio equipment in the aircraft.

16. Jones Enterprises, Inc. v. Atlas Service Corp., 442 F.2d 1136, 1140 (9th Cir. 1971); Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231, 235 (9th Cir. 1969).