MODERN TRAILER SALES, INC. and Billy Carruth, Petitioners,

v.

Claude TRAWEEK and Carmen Traweek, Respondents.

No. 3246.

Supreme Court of Alaska.

March 14, 1977.

Stephen D. Cramer, Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for petitioners.

Michael J. Schneider, Johnson, Christenson, Shamberg & Link, Anchorage, for respondents.

## OPINION

Before BOOCHEVER, RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

DIMOND, Justice Pro Tem.

Mr. and Mrs. Traweek purchased a trailer and tow truck from Modern Trailer Sales and Billy Carruth (hereinafter called Modern) in Pueblo, Colorado, for the purpose of towing the trailer to Anchorage, Alaska for use as a home. Enroute to Anchorage, the Traweeks were stopped somewhere inside the Canadian border and were informed by Canadian officials that they could not continue to tow the trailer through Canada because it was in violation of certain requirements. The Traweeks then left the trailer in Canada and proceeded with the tow truck to Anchorage, where they now reside. The trailer was later repossessed by the company financing its purchase and sold in the State of Wyoming.

The Traweeks brought this action against Modern in the superior court for Alaska on the basis of fraudulent or negligent misrepresentations made to them by Modern. Modern had allegedly misrepresented that the Traweeks would not be impeded in towing the trailer to Alaska by reason of any restrictions regarding its size or construction, imposed by any state of the United States or the government of any province of Canada.

Service of process was made on Modern at its place of business in Pueblo, Colorado. Modern filed a motion to dismiss the summons and complaint for lack of jurisdiction and to vacate the service of process. The superior court ruled that an Alaska court could properly exercise jurisdiction over Modern, and denied the latter's motion to dismiss. Modern then filed a petition for review with this court, seeking to set aside action of the superior court. Further proceedings in the action were stayed by the superior court pending our decision of Modern's petition.

Review at this time is appropriate because of our conclusion that the Alaska courts lack jurisdiction in this case. To postpone review until an appeal could be taken from a final judgment would result in unnecessary delay and expense.[1]

The Traweeks cite Alaska's long-arm statute, AS 09.05.015, in support of their contention that there is jurisdiction in the Alaska courts. The portion of the statute relied upon is this:

*Personal Jurisdiction.* (a) A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure

.　　.　　.　　.　　.

(4) in an action claiming injury to person or property in this state arising out of an act or omission out of this state by the defendant, provided, in addition, that at the time of the injury .　.　.

.　　.　　.　　.　　.

(B) products, materials or things processed, serviced or manufactured by the defendant were used or consumed in this state in the ordinary course of trade;

(5) in an action which

.　　.　　.　　.　　.

(E) relates to goods, .　.　. or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to the carrier occurred;

.　　.　　.　　.　　.

We have noted that the statute is broad and that we regard it as an attempt by the

1. We have discretionary authority to review interlocutory orders in designated situations, such as

　Where postponement of review until normal appeal may be taken from a final judgment will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors. [Appellate Rule 23(e)]

legislature "to establish jurisdiction to the maximum extent permitted by due process".[2] Thus, in a case involving personal jurisdiction, the questions presented are whether the long-arm statute applies and, if so, whether application of the statute will be consistent with due process of law.[3]

We begin by a consideration of the relevant statutory provisions. Under AS 09.05.015(a)(4)(B) it is necessary that the trailer be "used or consumed in this state in the ordinary course of trade". This requirement was not met here because the trailer was never in Alaska. And, if subsection (5)(E) of the statute is to be relied upon, the action which the Traweeks have brought must "relate to goods . . . or other things of value *actually* received by the plaintiff in this state" (emphasis added).[4] Since the action related solely to the trailer and it was never received by the Traweeks or anyone else in Alaska, this section is inapplicable.

The Traweeks attempt to establish jurisdiction in the Alaska court by stating that the tow truck, which did arrive in this state, was sold by them at a substantial pecuniary loss. Their argument is that had it not been for the fraudulent and negligent misrepresentations made by Modern as to the condition of the trailer, they never would have purchased the truck, and thus they would not have had to sell it.

The Traweeks do not contend that the tow truck, which did arrive in Alaska, was defective in any respect. Their assertions of derelictions on the part of Modern relate only to the trailer. Why they sold the truck at a "substantial pecuniary loss," we do not know. It is reasonable to assume that had the trailer arrived in Alaska and been placed on property to be used as a home, the tow truck would not have remained attached to the trailer. It probably would have been either used for some other purpose or possibly sold—perhaps at a pecuniary loss.

We do not understand how the presence or absence of a trailer in Alaska or its condition had anything to do with the price the Traweeks received from the sale of the tow truck, in view of the fact they have stated that their intention was to use the trailer as their home in Anchorage, Alaska. The sale of the tow truck at a loss or profit would have had nothing to do with the condition of the trailer.

The Traweeks state that but for Modern's fraud or negligent misrepresentations the trailer home would have arrived in Alaska. They argue that Modern is thus placed in the awkward position of claiming that their own wrongful conduct somehow shields them under a fundamental fairness concept from the application of *in personam* jurisdiction.

Even assuming the statute is applicable, we believe the Traweeks have somehow missed the point of what is involved in the concept of fundamental fairness as it relates to obtaining jurisdiction in Alaska over a non-resident defendant. The concept of fundamental fairness relates to a defendant, as well as to a plaintiff. Here, the Traweeks seek to obtain personal jurisdiction in Alaska over a non-resident defendant. The asserted tortious misrepresentations were made in Colorado and not in Alaska. It is uncontroverted that Modern has never done any business in Alaska, has never made any deliveries there of merchandise owned by it, has never had agents of any kind in Alaska, and has no business ties of any kind in this state. Maintenance of the suit in Alaska, absent any minimum contact with this state, would offend traditional notions of fair play and substantial justice.[5]

It is true that progress in communications and transportation has made the defense of a suit in a jurisdiction, other

---

**2.** *Jonz v. Garrett/Airesearch Corp.*, 490 P.2d 1197, 1199 (Alaska 1971).

**3.** *See Jonz, supra.*

**4.** AS 09.05.015(a)(5)(E)

**5.** *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, 102 (1945).

than where the defendant resides or carries on his business, less burdensome. But as the United States Supreme Court has pointed out, this does not mean that there are no longer any restrictions on the personal jurisdiction of state courts. In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957), the Court said:

> . . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. (Citations omitted.)

. . . . .

The application of that rule [regarding personal jurisdiction over a non-resident defendant] will vary with the quality and nature of the defendant's activity but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.[6]

In the *Jonz* case[7] we emphasized that it is the quality, rather than the quantity, of the contacts a non-resident defendant has with Alaska that determines whether personal jurisdiction may be exercised over such a defendant, consistent with due process of law. In this case, the only "contact" Modern had with Alaska, if it can be considered that at all, is that when the trailer, tow truck and other related equipment were purchased from Modern, the latter were notified by the Traweeks that these items were to be used by them in Alaska and that they were going to attempt to make their home there. Such a state-

ment is hardly sufficient to amount to a "contact" with Alaska that would be of sufficient quality to give an Alaska court jurisdiction over Modern.

The authority for the Traweeks' position, principally relied upon by them and also by the superior court, is a decision of the Court of Appeals for the Ninth Circuit in *Jones Enterprises, Inc. v. Atlas Service Corp.,* 442 F.2d 1136 (9th Cir.), *reh. denied* (1971). In that case a non-resident engineering firm, among other defendants, was sued in the United States District Court for the District of Alaska in connection with the collapse of an apartment building in Anchorage, Alaska during the March 27, 1964 earthquake. The basis for the action against this engineering firm, referred to as Lin, was that the collapse was caused by its faulty engineering designs and drawings. Process was served on Lin outside of Alaska under Alaska's long-arm statute. All of Lin's work had been performed outside of Alaska, but Lin knew that the ultimate destination of its work product was Alaska.

The Court of Appeals held that where activities complained of created a substantial risk of injury in Alaska, direct contact by Lin with that state was not essential. The federal court said:

> It is sufficient that, as here, the defendant purposefully sets his product or his designs into the stream of commerce, knowing or having reason to know that they will reach the forum state and that they create a potential risk of injury. (footnote omitted)[8]

The *Jones* case is inapposite to the one at hand. In *Jones,* the derelictions alleged were defective designs and drawings prepared by Lin. Although those derelictions occurred before the designs and drawings reached Alaska, their effect (the collapse of the building in Anchorage) was certainly felt in Alaska. Thus, it was not unfair to give the Alaska court jurisdiction over Lin,

---

**6.** 357 U.S. 235, 250–51, 254, 78 S.Ct. 1228, 1238–1240, 2 L.Ed.2d 1283, 1296, 1298 (1957).

**7.** *Jonz v. Garrett/Airesearch Corp.,* 490 P.2d 1197, 1199 (Alaska 1971).

**8.** *Jones, supra,* at 1140.

since its drawings and designs were "products, materials or things processed, serviced or manufactured by the defendant [Lin]" and were "used or consumed in this state [Alaska] in the ordinary course of trade."[9]

We do not have that situation here. As we have pointed out, there were no tangible goods, products, materials or things provided by Modern that were used or consumed in Alaska with the exception of the tow truck. The basis for the Traweeks' action was asserted tortious misrepresentations, and these were made in Colorado with respect to a trailer which never came into Alaska. In such a situation, where there have not been even minimum contacts by Modern with Alaska, maintenance of this action in an Alaska court would be fundamentally unfair to Modern because of the considerable expense and trouble it would be put to in defending the action.

We are not saying that the Traweeks do not have a meritorious claim against Modern. They may well have one. But under the requirements of due process, the determination of such a claim probably must take place in Colorado, not in the courts of Alaska.

The order of the superior court, which is the subject of review by this court, is reversed. The case is remanded with directions to enter an order dismissing this action and vacating the service of process on Modern.

REVERSED and REMANDED.

ERWIN, J., not participating.