**AMERICAN NATIONAL BANK AND TRUST COMPANY, Petitioner,**

v.

**INTERNATIONAL SEAFOODS OF ALASKA, INC., Respondent.**

No. S–1405.

Supreme Court of Alaska.

April 17, 1987.

Timothy R. Byrnes, John H. Tindall, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for petitioner.

James T. Brennan, Hedland, Fleischer, & Friedman, Anchorage, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

## I. INTRODUCTION.

This petition presents the question of whether Alaska's assertion of personal jurisdiction over American National Bank and Trust Company of Chattanooga, Tennessee ("ANB") violates the due process clause of the federal constitution. We hold that it does not, based on our view that ANB had the "minimum contacts" with Alaska required by due process and that Alaska's exercise of jurisdiction over ANB is reasonable under the facts of this case.

## II. BACKGROUND.

International Seafoods of Alaska, Inc. ("ISAlaska") is an Alaska corporation engaged in fish processing. It contracted to sell five hundred tons of pollock to Ocean Products, Inc. ("Ocean Products"), a South Carolina corporation, for shipment by Ocean Products from Kodiak, Alaska, in January 1983. Ocean Products, which buys and sells fish, arranged for insurance and for shipping of the pollock to Jamaican Frozen Foods, Ltd., in Kingston, Jamaica.

Ocean Products obtained a letter of credit from Florida National Bank of Miami ("Florida National") in the amount of $518,-085.71, with itself as beneficiary. It then engaged petitioner ANB[1] to act as the intermediary or confirming bank in disbursing proceeds from Florida National to the designated assignees.[2] Florida National was to issue credit to Ocean Products, thereby guaranteeing payment to whomever Ocean Products assigned the proceeds. ANB's role was to review the shipping and insurance documents, to assure that they conformed with the requirements of the letter of credit, and to receive the proceeds of the letter of credit from Florida National and disburse them to Ocean Products' assignees. ANB often serves as an intermediary bank in letter of credit transactions for a fee, in a transaction such as this one, of 1/4% of the proceeds to be transferred.

---

1. ANB is headquartered in Chattanooga, Tennessee, and has never had any branch offices outside of that state.

2. A letter of credit is "an engagement by a bank or other person made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit; a credit may be either revocable or irrevocable; the engagement may be either an agreement to honor or a statement that the bank or other person is authorized to honor." AS 45.05.-103(a)(1).

On December 7, 1982, Ocean Products notified ANB that it had assigned $324,500 of the proceeds of the letter of credit to ISAlaska. That same day, ANB informed ISAlaska by letter that the assignment had been made and that ANB was handling the funds.

The transaction did not unfold exactly as planned. When the shipper called at port to pick up the pollock, it loaded only forty percent of the amount ordered. The parties dispute why this occurred. The shipper left port and then returned to pick up the rest of the pollock. It loaded the additional fish, but the bills of lading reflect that the amount shipped still fell short of the contract requirement of five hundred metric tons. The shipper's return to port led to additional charges of $36,115.46, so Ocean Products assigned additional proceeds to the shipper to cover them.[3]

ANB received and reviewed documents relating to the letter of credit. Due to the extra shipping charges and minor variations between the documents and the terms of the letter of credit, ANB forwarded the documents to Florida National for approval before disbursing any funds. ANB received the letter of credit proceeds from Florida National in two payments; the first payment, $210,851.40, equaled about 40.7% of the total proceeds. ANB disbursed the assignment to ISAlaska in the same proportion; that is, it remitted to ISAlaska $132,254.40, approximately 40.7% of the $324,500 assignment. ANB also disbursed part of the assignments to the shipper and to the insurer, and remitted the excess to Ocean Products.

ANB received a second payment from Florida National in the amount of $273,-440.47, which was insufficient to cover the full amount of the assignments. (Florida National's payments funded approximately 93.5% of the total credit.) ANB attributed this to the fact that the assignment to ISAlaska was based on a larger shipment of fish than was delivered to Ocean Products. ANB remitted to ISAlaska an additional payment which, when added to the previous payment, totaled approximately 93.5% of ISAlaska's assigned share of the letter of credit. ANB made full disbursements to the insurer and shipper according to their respective assignments.

ISAlaska filed suit against ANB in superior court in Alaska, claiming that ANB should have fully funded the $324,500 assignment and that ISAlaska therefore is still owed $20,650 under its assignment of the proceeds. ANB denied liability and asserted lack of personal jurisdiction.[4] At oral argument on ANB's motion to dismiss for lack of jurisdiction, the superior court denied the motion on the ground that the "coming to earth of the letter of credit" in Alaska justified jurisdiction. In this regard, the court stated:

> I will confess I have a bias toward the extension of the statute conferring jurisdiction, and I have wrestled with that over the course of this day, and longer, hoping that that isn't what led me to plaintiff's position here.

The superior court stayed further proceedings while ANB petitioned this court for review. We subsequently granted the petition.

## III. DOES ALASKA'S ASSERTION OF PERSONAL JURISDICTION OVER ANB VIOLATE DUE PROCESS?

Alaska's long-arm statute, AS 09.05.015, authorizes its courts to assert jurisdiction to the maximum extent permitted by due process. *Jonz v. Garrett/Airesearch Corp.*, 490 P.2d 1197, 1199 (Alaska 1971).[5]

---

3. Without this assignment, the shipper would not authorize release of its bill of lading and the fish could not have been unloaded.

4. Alaska Civil Rule 12(b) provides in part:
   Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion; ... (2) lack of jurisdiction over the person....

5. *See also Modern Trailer Sales v. Traweek*, 561 P.2d 1192, 1194–95 (Alaska 1977); *Morrow v. New Moon Homes*, 548 P.2d 279, 293 (Alaska 1976); *cf. Stephenson v. Duriron Co.*, 401 P.2d 423, 424 (Alaska), *cert. denied*, 382 U.S. 956, 86 S.Ct. 431, 15 L.Ed.2d 360 (1965); *Northern Sup-*

In *Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877), the United States Supreme Court adopted the view that the authority of a court to summon a party before it to adjudicate a claim against that party is subject to constitutional limitations.[6] *See* 95 U.S. (5 Otto) at 733, 24 L.Ed. at 572. More specifically, the Court in *Pennoyer* held that judicial determination óf the personal liability of a defendant satisfies due process if the defendant was served personally within the forum state.[7] *Id.* Subsequently, in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945), the Court held that, for purposes of obtaining in personam jurisdiction, due process requires a defendant to have "minimum contacts" with the forum state such that maintenance of the suit does not offend "tradi-

tional notions of fair play and substantial justice."

While numerous decisions of the Supreme Court have addressed the issue of personal jurisdiction, only a few have involved the factual circumstance of a single contract or transaction within the forum state. The case which most clearly approximates the factual context of the instant case is *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).[8]

In *McGee,* the beneficiary of a life insurance policy sued the insurance company that had assumed the obligation owed the insured by his insurer. In 1944, Lowell Franklin, a resident of California, purchased the subject life insurance policy from an Arizona insurance company. *McGee,* 355 U.S. at 221, 78 S.Ct. at 200, 2

---

*ply v. Curtiss-Wright Corp.* 397 P.2d 1013, 1016–17 (Alaska 1965) (holding that Alaska's service of process statute, AS 10.05.642, extends jurisdiction of state courts to "the outer limits of the due process clause of the federal constitution").

We view ISAlaska's claim as encompassed by Alaska's long-arm statute. AS 09.05.015(a)(5)(A) is applicable. This subsection provides:

> A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure ... in an action which ... arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services in this state or to pay for services to be performed in this state by the plaintiff.

6. Writing for the Court in *Pennoyer,* Justice Field stated in part:

> [E]very State possesses exclusive jurisdiction and sovereignty over persons and property within its territory. As a consequence, every State has the power to determine for itself the civil *status* and capacities of its inhabitants; to prescribe the subjects upon which they may contract, the forms and solemnities with which their contracts shall be executed, the rights and obligations arising from them, and the mode in which their validity shall be determined and their obligations enforced.... The other principle of public law referred to follows from the one mentioned; that is, that no State can exercise direct jurisdiction and authority over persons or property without its territory.... The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territo-

ry, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions. 95 U.S. (5 Otto) at 722, 24 L.Ed. at 568 (emphasis added).

7. In response to changing times and the difficulties in applying *Pennoyer,* the Supreme Court subsequently adopted analytical theories of domicile and implied consent to uphold assertions of in personam jurisdiction. *See Milliken v. Meyer,* 311 U.S. 457, 462–63, 61 S.Ct. 339, 342–43, 85 L.Ed. 278, 282–83 (1940); *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1926); 4 C. Wright & A. Miller, Federal Practice and Procedure § 1065 (1969).

8. In *Kennecorp Mortg. & Equities v. First Nat'l Bank,* 685 P.2d 1232, 1239 (Alaska 1984), we said:

> If the claim involved in this case had arisen from actions of the defendant which were distinct from its forum-related activity, an assertion of personal jurisdiction would only be appropriate if the defendant's forum-related activity was "substantial" or "continuous and systematic". *International Shoe,* 326 U.S. at 317–18, 66 S.Ct. at 158–59, 90 L.Ed. at 102–03; *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir. 1981). In the present case, however, plaintiff's claims arise solely from KMEI's forum-related activities. Thus, it is not necessary for this court to determine whether the defendant's contacts with Alaska rose to the higher standard of being "substantial" or "continuous and systematic".

In the instant case, ISAlaska's claim arises from ANB's activities within Alaska.

L.Ed.2d at 225. In 1948, International Life Insurance Company ("International Life") agreed with the Arizona insurer to assume its insurance obligations. International Life then mailed a reinsurance certificate to Franklin in California, offering to insure him under the terms of the policy he held with his original insurer. *Id.* He accepted the offer and paid premiums by mail from his California home to International Life's Texas office until he died in 1950. *Id.* at 221–22, 78 S.Ct. at 200–01, 2 L.Ed.2d at 225. Franklin's mother, McGee, was the beneficiary under the policy. She sent proofs of his death to International Life, but the company refused to pay, claiming that he had committed suicide. *Id.* Neither the original insurer nor International Life had ever had an office or agent in California, and as far as the record indicated, International Life had never solicited or done any insurance business in California apart from the Franklin policy. *Id.*

McGee recovered a judgment in state court in California against International Life. *Id.* at 221, 78 S.Ct. at 200, 2 L.Ed.2d at 224–25. The California court based its jurisdiction on a state statute which subjects foreign corporations to suit in California on insurance contracts with residents of that state even though such corporations cannot be served with process within its borders. *Id.,* 355 U.S. at 221, 78 S.Ct. at 200, 2 L.Ed.2d at 225. McGee was unable to collect the judgment in California, and consequently filed suit on the judgment in a Texas court. The Texas court refused to enforce the judgment, holding it void under the fourteenth amendment because service of process outside California could not give the California courts jurisdiction over International Life. *Id.*

The Supreme Court held it sufficient for purposes of due process that the beneficiary's suit was based on a contract which had "substantial connection" with California. *Id.* at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226. The Court found it significant that the contract was delivered in California, the premiums were mailed from California, and the insured was a resident of California when he died. *Id.* The Court also stated:

It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable.

*Id.*

Of particular significance to the resolution of the instant petition is the comparative analysis of *McGee* undertaken by the Court in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In *Hanson,* the Court held that the courts of Florida could not assert personal jurisdiction over a Delaware trustee, even though the testatrix of the trust resided in Florida and received the trust income there. The petitioners in *Hanson* relied principally upon *McGee* in arguing that Florida's assertion of jurisdiction did not violate due process.

The Supreme Court concluded that the Delaware trustee lacked the minimal contacts with Florida necessary for that state's exercise of jurisdiction over a defendant. The Court noted that the trust company had no office in Florida and transacted no business there. *Id.* at 251, 78 S.Ct. at 1238, 2 L.Ed.2d at 1296. None of the trust assets had ever been held or administered in Florida, and the record disclosed no solicitation of business in Florida either in person or by mail. *Id.*

In distinguishing *Hanson* from *McGee,* the Court made the following comparison:

The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. In that respect, it differs from *McGee v. International Life Ins. Co.* 355 US 220, 2 L. ed. 2d 223, 78 S Ct 199, and the cases there cited. In McGee, the nonresident defendant solicited a reinsurance agreement with a resident of California. The offer was accepted in that State, and the insurance premiums were mailed from there until the insured's death. Noting the interest California has in providing effective redress for its

residents when nonresident insurers refuse to pay claims on insurance they have solicited in that State, the Court upheld jurisdiction because the suit "was based on a contract which had substantial connection with that State." In contrast, this action involves the validity of an agreement that was entered without any connection with the forum State. The agreement was executed in Delaware by a trust company incorporated in that State and a settlor domiciled in Pennsylvania. The first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that State. From Florida Mrs. Donner [the settlor] carried on several bits of trust administration that may be compared to the mailing of premiums in McGee. But the record discloses no instance in which the *trustee* performed any acts in Florida that bear the same relationship to the agreement as the solicitation in McGee.

*Id.* at 251–52, 78 S.Ct. at 1238–39, 2 L.Ed.2d at 1296–97 (emphasis in original and footnote omitted). The Court concluded that *Hanson* thus could not be said to involve a suit to "enforce an obligation that arose from a privilege the defendant exercised in Florida," *id.* at 252, 78 S.Ct. at 1239, 2 L.Ed.2d at 1297, and explained: "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1239, 2 L.Ed.2d at 1298, *quoted in Modern Trailer Sales v. Traweek*, 561 P.2d 1192, 1196 (Alaska 1977).

Thus, the Supreme Court found the defendant's acts in "purposefully avail[ing] itself of the privilege of conducting activities within the forum [s]tate" in *McGee* to

be a critical factor distinguishing that case from *Hanson*. *See Kennecorp Mortg. & Equities v. First Nat'l Bank*, 685 P.2d 1232, 1238 (Alaska 1984) (identifying nonresident defendant's "purposeful activity" with respect to the forum state as "the primary inquiry" in evaluating his contact with that state). In our view, the instant case is closer to *McGee* than to *Hanson*. Here ISAlaska's claim arises out of acts purposefully done in Alaska and a transaction consummated in Alaska. Acting on behalf of Ocean Products, ANB, a non-resident corporation, initiated contact with ISAlaska, an Alaska corporation doing business within Alaska. By letter dated December 7, 1982, addressed to ISAlaska in Kodiak, Alaska, ANB advised ISAlaska that:

> This document is given to you with *our assurance* that when proceeds are received under the above mentioned Letter of Credit, having been handled through our bank, *we will forward these funds immediately to you.*

[Emphasis added.][9] In reliance upon this direct assurance from ANB, ISAlaska delivered pollock to Kodiak to the ship arranged by Ocean Products for transporting the fish from Kodiak. Thereafter, on two separate occasions, ANB sent payments under the letter of credit to ISAlaska, in Kodiak, for the pollock it had delivered.

In light of the foregoing, we think that ANB had the minimum contacts with Alaska necessary to satisfy due process concerns. ANB, the non-resident defendant, purposefully availed itself of the privilege of conducting business activities within Alaska, and thereby invoked the benefits and protections of Alaska's laws. The bank solicited ISAlaska's performance by giving the Alaska corporation its assurance of payment; this offer was accepted by ISAlaska in Alaska, and performance was rendered in Alaska.[10] We believe that

---

**9.** Along with its December 7, 1982, letter, ANB enclosed a copy of the assignment of proceeds to ISAlaska made by the president of Ocean Products, and indicated the Bank's acceptance of the assignment.

**10.** We find ISAlaska's argument persuasive on this point. In part ISAlaska takes the position that:

> This is not a case of a foreign bank passively standing by while its customer, to whom it owed credit, assigned the proceeds of such credit to an individual in another state. Rath-

Alaska has a valid interest in providing effective redress for its residents when a non-resident refuses to comply with the payment terms of a contract solicited in Alaska. Furthermore, it is evident that ANB knew that the consequences of its failure to transmit funds would impact this domestic corporation.

The Supreme Court's recent decision in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), does not dictate a contrary conclusion. There the Court stated:

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Id.* 471 U.S. at 543, 105 S.Ct. at 2184, 85 L.Ed.2d at 543 (emphasis in original and citations omitted). The Court also reaffirmed that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in that other state for the consequences of their activities. *Id.* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 541 (citations omitted).[11]

We thus reach the final inquiry required by due process, namely whether Alaska's exercise of jurisdiction over ANB is reasonable—that is, whether the assertion of personal jurisdiction comports with "fair play and substantial justice".[12] In making this determination, we are called upon to evaluate the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).[13]

Where a defendant who has purposefully directed his activities at forum residents

---

er, this is a case where the bank, knowing that its direct assurance to an Alaskan business would be necessary in order to effectuate a commercial inter-state transaction, directly contacted the Alaskan business; directly notified the Alaska[n] business of its acceptance of the assignment; and assured ISA that payment would be mailed directly to Alaska by the bank, upon satisfaction of a single condition....

**11.** In this regard the *Burger King* Court further elaborated:

> By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner*, 433 U.S. 186, 218, 53 L.Ed.2d 683, 97 S.Ct. 2569 [2587] (1977) (Stevens, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World-Wide Volkswagen Corp.*

*v. Woodson*, 444 U.S. 286, 297, 62 L.Ed.2d 490, 100 S.Ct. 559 (1980).
471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540.

**12.** We note that the Supreme Court's opinion in *International Shoe* explained that this test for jurisdiction cannot be simply mechanical or quantitative:

> Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 103, 104. Our analysis of personal jurisdiction issues accordingly has emphasized the "quality rather than the quantity of the [defendant's] contacts." *Jonz*, 490 P.2d at 1199.

**13.** The Court noted that "[t]hese considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 476–77, 105

seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.[14] *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185, 85 L.Ed.2d at 544. Here we conclude that ANB, a non-resident corporation which purposefully directed its activities at an Alaska resident, has not demonstrated compelling circumstances which render Alaska's exercise of jurisdiction over ANB so unreasonable as to constitute a denial of due process. The hardships on the parties of litigating this case in Alaska or Tennessee appear balanced. The negotiations which formed the basis of the business relationship between ANB and ISAlaska occurred within Alaska. Alaska has an interest in resolving disputes which involve its resident corporations and in providing its residents with a means for convenient and effective relief. *Kennecorp Mortgage*, 685 P.2d at 1239 n. 5.

AFFIRMED.

BURKE, Justice, dissenting.

I dissent.

I am not convinced that there are sufficient "contacts" between petitioner and Alaska to satisfy the due process requirements of the federal constitution. U.S. Const. amend. XIV, § 1; *Leney v. Plum Grove Bank*, 670 F.2d 878 (10th Cir.1982); *Empire Abrasive Equipment v. Watson*, 567 F.2d 554 (3d Cir.1977). Thus, I would reverse the judgment below and remand to the superior court with instructions to dismiss the action against petitioner, upon the ground that the court lacks *in personam* jurisdiction.

S.Ct. at 2184–85, 85 L.Ed.2d at 543–44 (citations omitted).

**14.** As the Supreme Court explained:

Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience may seek a change of venue. *Id.* 471 U.S. at 477, 105 S.Ct. at 2185, 85 L.Ed.2d at 544 (footnotes omitted).