POLAR SUPPLY COMPANY,
INC., Appellant,

v.

STEELMASTER INDUSTRIES,
INC., Appellee.

No. S–11664.

Supreme Court of Alaska.

Dec. 23, 2005.

Rehearing Denied Feb. 9, 2006.

Lea E. Filippi and William M. Bankston, Bankston, Gronning, O'Hara, Sedor, Mills, Givens & Heaphey, P.C., Anchorage, for Appellant.

James N. Leik, Perkins Coie LLP, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

An Alaskan company, Polar Supply Company, Inc. (Polar), purchased a telescopic trolley boom from Steelmaster Industries, Inc. (Steelmaster), a Canadian corporation located in Ontario. Polar had a number of problems with the boom and brought suit against Steelmaster in the Alaska superior court. Steelmaster argued that it was entitled to dismissal for lack of personal jurisdiction, and the superior court agreed, dismissing Polar's suit.[1] We reverse because we conclude that an exercise of personal jurisdiction over Steelmaster is appropriate under Alaska's long-arm statute and conforms to the requirements of due process.

## II. FACTS AND PROCEEDINGS

Polar Supply Company, Inc. is an Alaskan corporation. Steelmaster Industries, Inc. is a Canadian corporation located in Mississauga, Ontario. Presidents from both companies met for the first time in Nevada at a National Concrete Masonry Association convention. Steelmaster provided brochures and sales information about its products dur-

---

1. In our review of the superior court's decision to grant Steelmaster's motion to dismiss, we accept as true those facts alleged by Polar Supply in its complaint.

ing the convention. Following the convention, Polar contacted Steelmaster to request a price quotation for a telescopic trolley boom. Steelmaster sent a sales proposal to Polar on January 20, 2000, quoting a price of $44,950 for a 120–35TC telescopic boom. Polar accepted this proposal in April 2000. Polar discussed the possibility of becoming a dealer for Steelmaster in Alaska and requested an eighteen percent "dealer discount," but there is no evidence that the parties entered into a dealership agreement or that the proposed discount was accepted by Steelmaster. Steelmaster's contract of sale includes a one-year warranty covering product defects.

Steelmaster manufactured the boom in Ontario. Polar purchased and shipped the boom free on board (F.O.B.) from Steelmaster's manufacturing facility in Ontario to a company in Washington where the boom was mounted onto a truck. Polar then had the truck and boom shipped from Washington to Alaska, where it was load tested. The boom failed to sustain the radius load represented by Steelmaster and was deemed unsuitable for the truck on which it was mounted.

On May 1, 2003, Polar filed suit against Steelmaster in Alaska, seeking consequential damages for loss of production, loss of use, loss of jobs, and loss of profits. Steelmaster immediately moved for dismissal for lack of personal jurisdiction and insufficient service of process. Polar then cured any defect in service of process with service of a supplemental summons and moved for permission to conduct jurisdictional discovery as to whether Steelmaster had sufficient ongoing contacts with Alaska to support an exercise of specific jurisdiction.

On July 30, 2004, the superior court ordered the matter dismissed without prejudice but did not reference Polar's request for discovery.[2] On August 25, 2004, a final judgment was entered awarding $2,166.45 in attorney's fees and costs to Steelmaster. Polar appeals.

## III. DISCUSSION

### A. Standard of Review

■■■ We review questions regarding personal jurisdiction de novo because "[j]urisdictional issues are questions of law subject to this court's independent judgment."[3] We adopt "the rule of law that is most persuasive in light of precedent, reason, and policy" when it comes to jurisdictional questions.[4]

### B. The Exercise of Personal Jurisdiction over Steelmaster Is Proper.

■■ Alaska's long-arm statute, AS 09.05.015, is broad and refers to several specific circumstances under which personal jurisdiction may be exercised. These circumstances are not meant to be exclusive[5] but rather provide "an authoritative basis for simplifying most jurisdictional questions. By furnishing a list of specific grounds providing jurisdiction, the statute avoids converting every jurisdictional issue into a constitutional question."[6]

■■■ For those circumstances that do not fit within the terms of the statutory provisions, AS 09.05.015(c) states that "[t]he jurisdictional grounds stated in (a)(2)–(10) of this section are cumulative and in addition to any grounds provided by the common law." The insertion of this language into the statute manifests the legislature's "intent to have the long-arm statute co-extensive with the Fourteenth Amendment."[7] As we recently explained in *Cramer v. Wade*, "even if they had merit, [the defendant's] specific long-arm challenges would not be determinative" be-

---

2. Our resolution of this case does not require us to reach Polar's claim that the superior court abused its discretion when it refused to permit additional discovery as to whether Steelmaster was subject to general jurisdiction.

3. *See S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 10 (Alaska 2002) (quoting *McCaffery v. Green*, 931 P.2d 407, 408 n. 3 (Alaska 1997)).

4. *Id.* (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

5. *See McCaffery v. Green*, 931 P.2d 407, 408 (Alaska 1997) (citing *Alaska Telecom, Inc. v. Schafer*, 888 P.2d 1296, 1299 (Alaska 1995)).

6. *Alaska Telecom*, 888 P.2d at 1299.

7. *Id.*

cause "our long-arm statute's catch-all subsection (c) extends to any case falling outside the statute's other subsections in which the exercise of jurisdiction is permissible under the Fourteenth Amendment."[8] Thus, we need not determine whether this case fits perfectly within subsections (a)(4) or (a)(5) if we conclude that due process permits the exercise of jurisdiction over Steelmaster.

Arguably, jurisdiction over Steelmaster is specifically authorized in this case by two subsections of AS 09.05.015(a). Subsection (a)(4)[9] provides jurisdiction in an action "claiming injury to person or property in [Alaska] arising out of an act or omission out of [Alaska]." This provision is applicable if (a) at the time of injury, solicitation or service activities were carried on in Alaska by or on behalf of the defendant or (b) products, materials, or things processed, serviced, or manufactured by the defendant were used or consumed in Alaska in the ordinary course of trade.[10] Polar claims that economic losses are sufficient to constitute injury under subsection (a)(4) of the long-arm statute. The additional requirements of subsection (a)(4) are satisfied by Steelmaster having sold a product to Polar, an Alaskan company. Steelmaster's contention that subsection (a)(4)(B) is inapplicable where only a single product is sold because the statutory language refers in the plural to "products, materials, or things" manufactured by the out-of-state defendant is not an argument in keeping with the reach of the long-arm statute or with our previous cases.[11] Nevertheless, it does remain unclear whether monetary damages stemming from breach of contract actions, rather than tort actions, can constitute "injury to property," as required by the statutory provision and this case therefore fits uneasily into the requirements of subsection (a)(4).

Subsection (a)(5)[12] of the long-arm statute specifies an array of contract actions that provide a basis for jurisdiction, including an action "that relates to goods ... actually received by the plaintiff in this state from the defendant without regard to where delivery to the carrier occurred."[13] Subsection (a)(5)(C) further provides for jurisdiction in an action that "arises out of a promise, made

**8.** 985 P.2d 467, 471 (Alaska 1999) (citing *Glover v. Western Air Lines, Inc.*, 745 P.2d. 1365, 1367 (Alaska 1987) and *Alaska Telecom*, 888 P.2d at 1299).

**9.** AS 09.05.015(a)(4) provides:

(a) A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure
. . . .
(4) in an action claiming injury to person or property in this state arising out of an act or omission out of this state by the defendant, provided, in addition, that at the time of the injury either
(A) solicitation or service activities were carried on in this state by or on behalf of the defendant; or
(B) products, materials, or things processed, serviced, or manufactured by the defendant were used or consumed in this state in the ordinary course of trade[.]

**10.** AS 09.05.015(a)(4)(A) & (B).

**11.** *See, e.g., Jonz v. Garrett/Airesearch Corp.*, 490 P.2d 1197, 1199 (Alaska 1971) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

**12.** AS 09.05.015(a)(5) provides:

(a) A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure
. . . .
(5) in an action that
(A) arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services in this state or to pay for services to be performed in this state by the plaintiff;
(B) arises out of services actually performed for the plaintiff by the defendant in this state, or services actually performed for the defendant by the plaintiff in this state if the performance in this state was authorized or ratified by the defendant;
(C) arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive in this state or to ship from this state goods, documents of title, or things of value;
(D) relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the order or direction of the defendant; or
(E) relates to goods, documents of title, or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to the carrier occurred.

**13.** AS 09.05.015(a)(5)(E).

anywhere to the plaintiff ... by the defendant to deliver or receive in this state or to ship from this state goods, documents of title or other things of value."[14] At oral argument, Steelmaster disputed subsection (a)(5)'s applicability, relying on the fact that Steelmaster itself never shipped the boom to Alaska but instead arranged for Polar to ship it from Steelmaster's manufacturing facility to Washington, where it was then mounted onto the truck and subsequently shipped to Alaska. Solely because of the nature of the shipping arrangements, then, the case does not fall easily within the requirements of subsection (a)(5) of the long-arm statute.

■ Since the unique nature of this contract makes this case difficult to categorize within the enumerated provisions of the statute, we find it more appropriate to examine jurisdiction using the standards set by AS 09.05.015(c), which authorizes Alaska's courts "to assert jurisdiction to the maximum extent permitted by due process."[15] We traditionally analyze personal jurisdiction under the long-arm statute by examining the requirements of due process. As the United States Supreme Court explained in *International Shoe Co. v. Washington*, due process requires that a defendant have "minimum contacts" with the forum state such that maintaining a suit in the forum state "does not offend 'traditional notions of fair play and substantial justice.' "[16]

"When a controversy is 'related to' or 'arises out of' a defendant's contacts with the forum, the exercise of jurisdiction is said to be 'specific' and is justified on the basis of the relationship among the defendant, the forum, and the litigation."[17] An out-of-state defendant who has not consented to suit in the forum state is said to have "fair warning" that his conduct will render him liable to suit if he has "purposefully directed" his activities at residents of the forum[18] and the litigation arises out of or relates to those activities.[19] The United States Supreme Court has further emphasized that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."[20] And we have recognized that "[t]he contract along with such other factors as 'prior negotiations and future consequences ... and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.' "[21] We have found it particularly significant when an out-of-state defendant solicited, initiated, or directly contacted the Alaskan resident.[22]

■ In this instance, Steelmaster traveled to Nevada to a trade show of the National Concrete Masonry Association in order to market its equipment. Steelmaster sought purchasers for its products at this Nevada convention, where prospective buyers from throughout the United States were presumably present. Steelmaster relies on the fact that Polar initiated contact with Steelmaster in Ontario, but it is undisputed that Polar learned about Steelmaster's product and availability at the trade show in the United

14. AS 09.05.015(a)(5)(C).

15. *Am. Nat'l Bank & Trust Co. v. Int'l Seafoods of Alaska, Inc.*, 735 P.2d 747, 749 (Alaska 1987) (citing *Jonz*, 490 P.2d at 1199).

16. 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

17. *Glover*, 745 P.2d at 1367 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

18. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S.

770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

19. *Id.* at 472, 105 S.Ct. 2174 (citing *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868).

20. *Id.* at 473, 105 S.Ct. 2174 (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 222–23, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)).

21. *Alaska Telecom*, 888 P.2d at 1300 (quoting *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174).

22. *See, e.g., Cramer*, 985 P.2d at 471; *Alaska Telecom*, 888 P.2d at 1301; *Am. Nat'l Bank*, 735 P.2d at 752–53 n. 10.

States. Although Steelmaster does not advertise specifically in Alaska, it does buy advertisements in national trade journals published by the National Concrete Masonry Association. Steelmaster also has five dealers in the eastern and central regions of the United States. Moreover, the record indicates that Steelmaster held itself out on its website as a company that "offer[s] complete, factory backed local distribution to service the masonry, precast and building industries throughout North America." Because Steelmaster holds itself out to buyers throughout the United States, it therefore should reasonably have anticipated that its products would be purchased by Alaskan companies.

Moreover, at the time Steelmaster entered into a contract for the sale of the trolley boom to Polar, Steelmaster was aware that Polar was an Alaskan corporation that planned to use the trolley boom in Alaska. Polar maintains that apart from the contract itself, Steelmaster had other contacts with Alaska, including negotiations about the contract, discussions about the possibility of Polar becoming a dealer for Steelmaster's operations in Alaska, and provision of an express warranty in the contract that created an ongoing obligation to service and repair the boom for a year after sale. Steelmaster guaranteed Polar that any "[d]efects developing in any part of a machine ... will be replaced or repaired free of charge at our option within one year." This warranty clause is an example of a party purposefully creating "continuing relationships and obligations with citizens of another state" and thereby subjecting that party to regulations and sanctions in that other state as a consequence.[23]

█ We have previously explained that emphasis should be placed on "the quality rather than the quantity of the contacts."[24]

As the Ninth Circuit reasoned, "[t]he purposeful availment requirement is met if the defendant 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.' "[25] We conclude that Steelmaster made the affirmative choice to contract with an Alaskan corporation that planned to use its product in Alaska and hence conclude that Steelmaster "purposefully availed itself of the privilege of conducting business activities within Alaska."[26]

█ The final inquiry required by due process is whether the assertion of personal jurisdiction comports with "fair play and substantial justice."[27] Once it has been determined that a defendant purposefully established minimum contacts with Alaska, " 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction."[28] In making this determination, we evaluate several factors, including: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental social policies.[29]

Steelmaster argues that as a small Canadian corporation with only eighteen employees, it would face a tremendous burden defending litigation in Alaska because its employees would be forced "to travel thousands of miles from their residence in Ontario, at considerable expense, inconvenience, and loss of time." Polar does not dispute this, but rather argues that because Steelmaster does not limit its business activities or advertising to Canada, it should be required to litigate where its products fail.

---

**23.** *Am. Nat'l Bank,* 735 P.2d at 752 (quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174).

**24.** *Jonz,* 490 P.2d at 1199 (citing *International Shoe,* 326 U.S. at 319, 66 S.Ct. 154).

**25.** *Harris Rutsky & Co. Ins. Svcs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1130 (9th Cir. 2003) (quoting *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990)).

**26.** *Am. Nat'l Bank,* 735 P.2d at 752.

**27.** *Id.* at 753.

**28.** *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1114 (9th Cir.2002) (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174).

**29.** *Am. Nat'l Bank,* 735 P.2d at 753.

First, we agree with the Ninth Circuit that the existence of an ongoing relationship with the United States is relevant when considering sovereignty concerns,[30] and find it significant that Steelmaster has dealers in Illinois, New York, New Jersey, Maryland, and Florida. We are unconvinced that Steelmaster would be more inconvenienced by a suit in Alaska than by a suit brought in one of these other states. Similarly, it seems reasonable for Steelmaster to anticipate a possible lawsuit in Alaska from the sale of a complicated piece of machinery valued at almost $45,000, which it has guaranteed against defects.

Second, Steelmaster argues that Ontario would be a suitable alternative forum and contends that because the boom was assembled in Ontario any alleged defect will require testimony from Steelmaster employees involved in the assembly. But as we have previously explained, "[i]nconvenience to at least some parties will probably be associated with litigation in either this jurisdiction or the [foreign] forum which [the defendant] prefers." [31] While it is true that the boom was manufactured in Ontario, it was tested by the American Bureau of Crane Inspection,

Inc. in Alaska, where it failed to sustain the radius load represented by Steelmaster. Thus, both parties stand to be inconvenienced because testimony will be required from witnesses in Ontario and Alaska, and Steelmaster's inconvenience in this instance is not sufficient to constitute a denial of due process. We conclude that Steelmaster has sufficient minimum contacts with Alaska and that an exercise of personal jurisdiction in this case comports with fair play and substantial justice.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the superior court's order dismissing the case for lack of personal jurisdiction and REMAND for proceedings consistent with this opinion.

---

**30.** *See Sinatra v. Nat'l Enquirer,* 854 F.2d 1191, 1199 (9th Cir.1988) (recognizing that "continuing contacts between the [Swiss] Clinic's United States-based agent and California translate into less of a litigation burden than if the Clinic maintained no physical presence or agent with the United States").

**31.** *Volkswagenwerk, A.G. v. Klippan, GmbH,* 611 P.2d 498, 502 (Alaska 1980) (rejecting two German corporations' claims that subjecting them to suit in Alaska would be unreasonable and explaining that "Alaska's jurisdictional power must be upheld despite claims of inconvenience and unreasonableness by [the nonresident defendant]").